## SAMUEL H. GREY, ATTORNEY-GENERAL, v. NEWARK PLANK ROAD COMPANY.

Argued February 23, 1900—Decided June 11, 1900.

1. By the act of February 24th, 1849, the corporate existence of the Newark Plank Road Company commenced at the time of the passage of the act and terminated on the 24th of February, 1899, except for the purposes specified in the fifty-ninth section of the act respecting corporations.

2. The act of April 9th, 1889 (*Pamph. L., p.* 230), under which said company claims that its corporate life was extended, is unconstitutional—*first,* because its title is misleading. The title is general, and the body of the act restricts its application to companies having certain peculiar characteristics; *second,* the act is special and is inhibited by the constitution because it grants corporate powers.

On *quo warranto,*

Before DEPUE, CHIEF JUSTICE, and Justices VAN SYCKEL and GUMMERE.

For the relator, *Henry Young* and *Samuel Kalisch.*

For the respondent, *Richard V. Lindabury* and *James B. Vredenburgh.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is an information in the nature of a *quo warranto,* filed by the attorney-general for and on behalf of the state, against the Newark Plank Road Company. It is a public prosecution, involving the existence of the defendant corporation, and has for its object the recovery to the state of franchises which the defendant is alleged to have usurped.

The information contains three counts.

The first count alleges that the defendant, since the 24th day of February, 1899, has unlawfully used and exercised, and still does unlawfully use and exercise, the liberties, privileges and franchises of a body politic and corporate, in fact and in law, of the State of New Jersey, and as such corporate body and by said name, claims to be entitled to use and enjoy the liberties, privileges and franchises heretofore conferred by an act of the legislature of the State of New Jersey, entitled "An act to incorporate the Newark Plank Road and Ferry Company," approved February 24th, 1849, and the several supplements thereto, without any warrant, charter, incorporation or legislative authority whatsoever.

The second count sets forth that the said company was duly incorporated under said act of February 24th, 1849, for the term of fifty years, and that its corporate existence ceased and terminated on the 24th of February, 1899, and that ever since the said date the said defendant has unlawfully used and exercised the liberties, privileges and franchises conferred by said act without warrant or lawful authority.

The third count is substantially like the second.

To this information the defendant pleaded three pleas.

The first plea alleges, in answer to the first count, that by the act of February 24th, 1849, the corporate existence of the defendant did not expire until February 24th, 1901, and that by an act of the legislature passed April 9th, 1889, its corporate existence was extended for fifty years. *Pamph. L., p.* 230.

The plea to the second count sets up the same defence.

The plea to the third count recites that, under certain acts of the legislature of this state, the defendant constructed a horse or street railway on said turnpike, and that before the 24th day of February, 1899, it leased the same to other corporations for nine hundred and ninety-nine years, which have since that time operated said horse railway.

To these pleas the relator has interposed a general demurrer, by which two important questions are presented for solution.

*First.* Whether by the terms of the act of February 24th,

1849, the corporate life of the defendant ended on the 24th of February, 1899, or two years later?

*Second.* Whether the act of April 9th, 1889, extended the corporate existence of the defendant for fifty years?

If either of these questions is solved in favor of the defendant, the demurrer must be overruled.

The third plea is no answer to the third count, because the legislation therein specified does not, and does not purport to extend the corporate life of the defendant beyond the period of limitation fixed in its original charter.

If its corporate existence terminated on the 24th of February, 1899, the lease for nine hundred and ninety-nine years was an unlawful exercise of corporate power, and the fact that the road is operated by another company under such a lease cannot prevent the state from interposing as against this defendant for the purpose of having it adjudged to be a usurper of the franchises granted to it.

The first question to be considered is whether by the act of February 24th, 1849, the defendant's corporate existence terminated on the 24th of February, 1899?

It is well and wisely settled in this state that in the interpretation of public grants the grantee can take nothing not clearly given to him by the grant. In cases of doubt the grant is construed in favor of the state, and most strongly against the grantee. *Morris Canal Co.* v. *Central Railroad Co.,* 1 *C. E. Gr.* 419; *Camden and Amboy Railroad Co.* v. *Briggs,* 2 *Zab.* 623; *Jersey City* v. *City of Hudson,* 2 *Beas.* 420.

To this requirement the defendant must conform to establish its claim by force of a legislative grant.

The case of the defendant company rests upon the eighteenth section of the act of February 24th, 1849 (*Pamph. L., p.* 105), which is as follows: "That this act shall be deemed and taken as a public act, and at all times, in all courts and places whatever be recognized as such; and shall be commenced within two years, and continue in full force for the term or fifty years."

The defendant construes this section to mean that the franchise of operating a turnpike shall be commenced within

two years, and continue in full force for the term of fifty years from the expiration of the two years. To such a reading of this act we cannot assent, because that is not expressed.

The language is that the act shall be commenced within two years and continue for fifty years, but manifestly the legislature did not mean that the act should take effect in the future, some time within two years, as the previous sections of the charter gave the company power to construct a turnpike road at once, and the power of eminent domain for that purpose. If the fifty years did not begin to run until at some period within two years from the date of the passage of the act, there is no definite time fixed for the beginning of the fifty years of corporate life, and no means provided in the act by which it may be certainly determined, and consequently no certain date for its ending.

The word "continue" is used in the sense of "remain," and has no reference to any prior term to which the fifty years are to be added; it does not say for fifty years thereafter.

The only reasonable interpretation of the section is that the work of construction should be commenced within two years, and that the act should remain in force for the term of fifty years from the date of its passage.

This view is supported by the provisions of the nineteenth section, "that this act shall take effect immediately, and that unless said road and ferry shall be completed and put in use within five years from the passage hereof, this act shall be void."

The act was to go into effect immediately, it was to continue for fifty years, the road building was to be commenced within two years, and to be completed within five years from the passage of the act. The defendant can take nothing from the state except by express grant or by very clear implication.

Assuming the language of the charter to be doubtful, this question must be resolved in favor of the state and against the grantee.

Unless, therefore, the defendant can successfully invoke in its support the act of April 9th, 1889, its right to continue in the exercise of the granted franchises ceased February 24th, 1899.

The title of the act of 1889 is "An act concerning companies empowered to construct horse railroads," indicating that it was to apply to horse railroads generally.

The body of the act limits its application to the following corporations:

First, those heretofore organized under any special act of the legislature, and which have, secondly, been empowered by any supplement to lay railroad tracks and operate a horse railroad, and thirdly, whose time limited for commencing and completing the building of such railroad has expired.

The particularity of the descriptive language in this act shows that its framer was providing for a particular corporation, and it aptly described the Newark Plank Road Company.

The act is special, the title misleading, and therefore unconstitutional. *Coutieri* v. *New Brunswick,* 15 *Vroom* 58; *Beverly* v. *Waln,* 28 *Id.* 143; *Falkner* v. *Dorland,* 25 *Id.* 409; *Johnson* v. *Asbury Park,* 31 *Id.* 427.

This act is also inimical to that paragraph of the organic law that "the legislature shall pass no special act conferring corporate powers, but shall pass general laws under which corporations may be organized, and corporate powers of every nature obtained."

The act of 1889 purports to extend the period of existence of this corporation for fifty years, and this is clearly a grant of corporate power.

The pleas, therefore, set up no sufficient defence to the charges contained in the information, and there must be judgment against the defendant on the demurrer, unless the first count of the information is bad.

The demurrer is general to the three pleas, and the rule is to go back to the first defective pleading.

The insistment of the defendant is that the first count simply alleges that the defendant is exercising a franchise to be a corporation without legislative or other authority, and that the naked charge of usurping the franchise to be a corporation cannot be maintained in a suit against a corporation in its corporate name; that when the object is to test the fact of

corporate existence, as where individuals assume, without legal authority, to act in a corporate capacity, the proceeding must be against the individuals who so usurp this power. Without discussing this rule, it is sufficient to say that it is not applicable to this case.

The question to be determined is whether by the act of 1849 the corporate life of the defendant expired in 1899 or in 1901?

A judgment in an information against individuals would not conclude or affect the corporate defendant.

The question presented can be conclusively settled only by proceedings against the corporate body, and if the first count presents for adjudication the question to be determined, there is no fatal infirmity in it.

The allegations are that the defendant, since the 24th day of February, 1899, has unlawfully used and exercised the franchises of a body politic and corporate, and that it claims to be entitled to use and exercise the franchises heretofore conferred under the act of 1849 without any warrant whatsoever.

This is equivalent to a statement that although the act of 1849 conferred certain franchises upon the defendant, yet the defendant continued to use and exercise them after February 24th, 1899, although he could not lawfully do so. The act of 1849 is a public act, of which the court is required to take notice.

The allegation that since 1899 the defendant has unlawfully exercised the granted franchises, when the act of 1849 is read into the first count, distinctly presents the question, whether since the 24th of February, 1899, the defendant has been a usurper.

There must be judgment against the defendant on the demurrer.

The effect as to the public of the determination by the court that the plank road company has ceased to exist in law, except for the purposes specified in section 59 of the act concerning corporations, is not presented by this controversy.

The defendant company will still continue to be a body corporate for the purposes in that section of the said act specified.